FILED

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:

Yvonne Terrell Dickerson,

Debtor.

2009 DEC -8  AM 11: 46

CLERK OF THE
BANKRUPTCY COURT
N.D. OF NY
SYRACUSE

Case No. 08-33071
Chapter 7

## MEMORANDUM-DECISION AND ORDER

Attorney Christopher J. Chadick ("Chadick") filed this chapter 7 case on behalf of the debtor Yvonne Terrell Dickerson ("Debtor") on December 3, 2008. Based upon a motion filed by the United States Trustee challenging the adequacy of Chadick's representation of the Debtor in his conduct of the case, the court held hearings on July 16 and August 13, 2009, to consider the relief sought by the United States Trustee for sanctions against Chadick, including an order disgorging his fees and limiting his future ability to practice in this court. Additional complaints and information regarding Chadick's practice came to light during the pendency of this motion and prompted the court to hold additional hearings as noted below. This case has served as a focal point within which to assess a continuing stream of complaints regarding Chadick's representation and practice before this court. Throughout the hearings before the court, Chadick has been represented by counsel, Stewart Weisman, Esq., and the Office of the United States Trustee has appeared and been represented by Guy Van Baalen, Esq. This memorandum-decision incorporates the court's findings of fact and conclusions of law as permitted by Federal Rule of Bankruptcy Procedure ("Fed. R. Bankr. P.") 7052, made applicable by Fed. R. Bankr. P. 9014.

1

*BACKGROUND*

The basis for the motion, which was not opposed,[1] includes Chadick's delay in filing the instant case for ten months after receiving payment of his attorney fees in full, his failure to contemporaneously date the petition and schedules when executed, failure to notify the Debtor of his unilateral adjournment of the Debtor's first meeting of creditors conducted pursuant to 11 U.S.C. section 341 ("First Meeting"), at which Debtor appeared *pro se* without benefit of counsel, and Chadick's unilateral rescheduling of the First Meeting to a date on which Debtor could not be present due to a pre-scheduled hospitalization of Debtor's son. At the hearing on August 13, 2009, Chadick agreed to disgorge and pay over to the Debtor the $750.00 in attorney's fees that he received for his representation in this case and further agreed not to file any new bankruptcy cases on behalf of debtors in the United States Bankruptcy Court for the Northern District of New York, Syracuse division. The court was awaiting submission of a consensual order signed by the parties, reflective of the disposition of the motion announced on the record made on August 13, when the court received a letter from another client of Chadick's regarding his representation related to her filing for bankruptcy relief. The letter immediately prompted entry of this court's Order to Show Cause.

*Order to Show Cause*

On August 24, 2009, this court by Order to Show Cause (Doc. no. 12) ("Order") set down an evidentiary hearing for September 10, 2009, directing Chadick to personally appear and show cause as to why he should not be permanently suspended from practice before this court. Attached to the Order was a letter received from Jacqueline Giddings in which she states that in

---

[1] Under Local Bankruptcy Rule 9013-1 (f) (1) for the Northern District of New York, answering papers are required to be filed and served on every motion. Despite the requirement of the Rule, no written response was filed by Chadick.

July 2007 she and her husband paid Chadick $750.00 to file a joint chapter 7 petition, but that

two years later, she independently confirmed that the petition had never been filed. The letter

further recited that she and her husband, James Giddings, had both completed the required credit

counseling classes in anticipation of filing, which will need to be repeated since the timing of

them has expired. Ms. Giddings and James Giddings have since divorced and are now ineligible

to file jointly, which will double the cost of filing bankruptcy since separate filings will be

required. As a result of the allegations in the letter -- which parallel the excessive delay

attendant in filing the present case, the Order directed Chadick by September 8, 2009:

> to render an accounting as to all attorney's fees and filing fees that Attorney
> Chadick has received in part or in whole for the initiation of bankruptcy
> proceedings that have not yet been filed, the dates said fees were received by
> Attorney Chadick, the dates of the initial conferences Attorney Chadick held with
> clients from whom said fees were received, and the number of said petitions that
> have not yet been filed.

(Order at 3). To protect the clients' confidentiality, the Order provided that the clients were to be

referenced by number only and not by name. The Order additionally footnoted a non-exhaustive

list of nine other cases in which clients of Chadick lodged legitimate complaints that this court

has addressed regarding Chadick's lack of effective representation of his clients' interests.[2]

---

[2] A representative sample of cases questioning the adequacy of Chadick's representation since
April 2008 include the cases of *In re Doherty*, Case No. 09-30341 (order disgorging fees paid to
Chadick entered Aug. 24, 2009); *In re Gyder*, Case No. 06-33822 (order sanctioning Chadick
entered July 23, 2009); *In re Plucinik*, Case No. 08-33172 (order disgorging fees paid to Chadick
entered June 24, 2009); *In re Thomas*, Case No. 06-30889 (order disgorging fees paid to Chadick
entered June 22, 2009); *In re Brumfield*, Case No. 08-30300 (settlement agreement and stipulated
order disgorging fees paid to Chadick and prohibiting Chadick from filing petitions in
bankruptcy commencing March 1, 2010, but permitting him to continue representing creditors
without time restriction entered March 1, 2009); *In re Clarke*, Case No. 08-30868 (settlement
agreement and stipulated order entered Dec. 15, 2008); *In re Perry*, Case No. 08-30227 (order
setting hearing on default motion for relief from stay, despite absence of any response by
Chadick as debtor's counsel, based upon debtor's appearance pro se at the court's regular motion
term and directing Chadick to fully represent the debtor entered Oct. 28, 2008); *In re Heath*,

On September 8, 2009, in response to this court's directive, Chadick filed with the court a document entitled, "Filing Pursuant to Order to Show Cause," in which he lists a total of six clients (identified as Clients, Nos. 1 through 6) from whom he had received fees ranging from $40.00 to $400.00 from January 10, 2008 up to March 20, 2009 ("Accounting"). The total fees represented to have been received for bankruptcies yet to be filed are $765.00. On September 9, 2009, Chadick filed a document captioned "Amended Filing Pursuant to Order to Show Cause." This document is identical to the original Accounting with one exception; it lists the dates that fees were initially received from all six clients which correspond to the dates of the initial conferences.

*Evidentiary Hearing: Part I*

At the September 10, 2009 hearing, Jacqueline Giddings testified in support of the statements contained in her letter. She paid Chadick $750.00 over the course of a month from July to August 2007 for the filing of bankruptcy. She dropped off her paperwork and repeatedly followed up with phone calls to the office. She was told, that "We'll get a hold of you next

---

Case No. 08-30502 (letter from co-debtor explaining that premature closing of case prior to discharge was attributable to Chadick's representation and requesting waiver of fees for reopening of case filed September 26, 2008; order to show cause why case should not be reopened to permit debtors to obtain a discharge and why the reopening fee should not be paid by Chadick as debtors' counsel entered Oct. 20, 2008; order reopening case entered Nov. 14, 2008); *In re Hartman*, Case No. 08-30228 (letter from the debtors filed April 11, 2008, explaining that dismissal of case resulted from Chadick's representation and requesting reinstatement of their case and expressing fear of retaliation; "[Chadick] is very short with us and . . . [we] fear that if he is contacted regarding this letter, he may further mishandle our case."; order to show cause why the debtors' case should not be reinstated and directing that the debtors and their counsel appear entered Apr. 22, 2008; order vacating order of dismissal and reinstating the debtors' case entered May 20, 2008); *In re Haynes,* Case No. 09-32249 (Chadick filed financial management course certificate in a closed case in August 2006 but never moved to reopen the case to allow a discharge to be entered, prompting the filing of a motion three years later in August 2009 by the United States Trustee's office to accord relief to the debtor).

week" but never got a call back nor did she receive a satisfactory response as to what was taking so long. (Evid. Hr'g Tr. 11:22, Sept. 10, 2009). The court found her testimony trustworthy, with no guile nor motivation for telling the court anything other than what had transpired with regard to her representation by Chadick. It is unclear from the record whether the Giddings, who had in excess of $200,000.00 in debt, would have filed under chapter 7 or chapter 13 of the Bankruptcy Code; however, any confusion on this point is not attributable to the Giddings but squarely rests with counsel who had the fiduciary responsibility to appropriately advise and communicate with his clients. All of the efforts at communication seemed to emanate from Ms. Giddings who followed up numerous times with Chadick's office. Counsel seemed to ignore his client who was specifically told by his office staff, "You're not priority," a refrain common to the complaints registered by others against Chadick. (Hr'g Tr. 11:23).

Chadick testified at the hearing. Although his recollection of the facts differed, Chadick did not have the Giddings' file with him nor did he produce or reference any written correspondence to his clients explaining why the case had not been filed or what further was required to get the case filed. Nothing in his testimony provided sufficient justification for the inordinate and prejudicial delay. Chadick made a calculated decision not to file any written opposition or response to the Order as revealed by his testimony. When asked why he chose not to defend himself by the submission of a written pleading against claims of inadequate representation, Chadick responded: "Because in discussions with counsel our decision was to settle the matter and not oppose it, in light of the fact that we had already made the business decision long ago that we were no longer going to do bankruptcy work in this area," and "I didn't think that it would have been prudent to put in a responsive pleading." (Hr'g Tr. 53:6-9, 17-18). From the testimony and lack of documentary proof presented, the court infers that

anything Chadick could have produced or said would only have further demonstrated his dereliction of duty. Indeed, the absence of any written correspondence to his client after he was retained offering any explanation for the inordinate delay underscores his failure to provide zealous and competent representation.

The court received in evidence as Composite Exhibit "A" the original and amended accountings filed on September 8 and 9, 2009. In his sworn testimony to the court, Chadick testified and reiterated that he had rendered a complete accounting in response to the court's directive. (Hr'g Tr. 25). He did not dispute receiving the $750.00 testified to by Ms. Giddings or dispute that he never filed bankruptcy on the Giddings' behalf. Yet, remarkably, he did not include the $750.00 on the accounting directed by the court. Giddings' payment of $750.00 clearly represents attorney's fees received in part or in whole for a bankruptcy that had not yet been filed. When asked why it was not included, Chadick offered no cogent explanation. His statement: "Because that was already referenced in the order to show cause. I didn't believe I needed to reference it again," belies the fact that he never referred to it at all. (Hr'g Tr. 25:18-19). Chadick then affirmatively testified on the record that there were no other undisclosed cases similar to that of Ms. Giddings that should have been included in the accounting. (Hr'g Tr. 26:9-12). Chadick reaffirmed this testimony upon cross-examination by the United States Trustee.[3]

---

[3] At the evidentiary hearing the following exchange occurred:
> Q. Okay. And again, you testified that the six cases that are shown here under amended filing dated September 9th, are the only "open" -- open bankruptcy -- consumer bankruptcy filings that you have in your office? Is that correct?
> A. That's correct. . . .
> Q. . . . You don't believe you have any other pending bankruptcy or potential bankruptcy clients waiting to file bankruptcy through your office?
> A. No.
> Q. Okay. So, that -- and that's -- these deal with the whole universe of 7 and 13. Is that correct?

Toward the end of the hearing, following a brief recess at which the parties had an opportunity to confer and further prompted by this court's expressed concern regarding Chadick's continuing obligations and duties in the representation of clients before the court, Chadick agreed on the record: 1) to refund $750.00 in fees plus $100.00 in costs to Ms. Giddings and to return all of her original papers, which the court so ordered; 2) to cease initiating bankruptcy proceedings under any chapter across the entire district; 3) to *personally* appear with his clients in those cases where the initial section 341 meeting of creditors had not yet been held; and 4) to phase out his involvement in currently pending cases in this court by effectuating substitution of counsel over the course of the next six months.  With these concessions, which the court accepted and directed Chadick to comply with, the matter once again appeared "settled."  Four days after the hearing, however, on September 14, 2009, a debtor, Robert S. Moody, appeared at the federal building to attend his initial section 341 meeting of creditors but Chadick, his bankruptcy counsel, was not present, contrary to the representations made to the court.  Shortly thereafter, three separate complainants raised additional issues which called into question the completeness of the accounting submitted by Chadick and his continued practice before this court.  On September 21, 2009, this court issued an Order Continuing Hearing on Order to Show Cause which reopened the record and set a further evidentiary hearing for September 24, 2009.

*Evidentiary Hearing: Part II*

On September 24, 2009, the court heard from three additional witnesses who had retained Chadick to represent them in filing for bankruptcy and a fourth witness who works in the Chapter 13 Trustee's office. Chadick was also present and testified.

---

A. Yes.
(Hr'g Tr. 54:13-17, 55:11-17).

*Tammy Bolster*

Tammy Bolster testified that she and her husband, Benjamin Bolster, met with Chadick in January 2008 to discuss filing for chapter 7 bankruptcy relief. Chadick quoted them a total fee of $1,200.00 and at that first meeting paid Chadick a partial retainer of $300.00 plus an additional $400.00. The Bolsters have three young children with the sole family income generated by Benjamin Bolster who makes $27,000.00 a year. They provided Chadick with their outstanding bills and list of creditors. Included in the list of creditors, which they discussed with Chadick, was a furniture company which was beginning to pursue collection. Soon after their meeting, the Bolsters went online to fulfill the credit counseling requirement, a precondition to filing. Ms. Bolster assumed that Chadick would begin working on their case, advise what further he might need from them and file soon afterwards. From January 2008 to July 2009, Ms. Bolster testified that they received no communication from Chadick's office, neither a phone call nor mail. In the interim, the furniture company obtained a judgment against them and garnished ten per cent of Mr. Bolster's wages, amounting to approximately $55.00 a week, which placed an inordinate strain on their limited budget with three young children. The Bolsters stopped using their checking account and paid cash for everything. On July 15, 2009, Ms. Bolster returned to Chadick's office and made a final payment of $500.00. At that time she was told that in view of the garnishment, the bankruptcy filing would be done within the week. Two weeks passed and when Ms. Bolster again called back, Chadick told her that it "would soon be done." (Second Evid. Hr'g Tr. 12:3, Sept. 24, 2009). When the office still had not contacted her, Ms. Bolster followed up a couple of weeks later and was told that Chadick was away from the office for a

week.[4]  Notwithstanding that Chadick's office was in possession of all of the information needed

to file a petition on behalf of the Bolsters, that he had received payment of his attorney's fees in

full and that there was an urgency in filing so as to cease the ongoing garnishment and recoup the

full wages needed by the Bolsters to support their family, Chadick did nothing.  Ms. Bolster

testified that two weeks prior to the September 24 hearing, she called Chadick's office only to be

told by his office manager, Hugh Fox, that her file was "still in the pile, and that it has not been

touched or looked at."  (2d Hr'g Tr. 13:1-4).

In Mr. Chadick's rebuttal testimony, he did not dispute Tammy Bolster's testimony.  He

acknowledged, through counsel, that while the exact amount is uncertain, he received at least

$1,000.00 from the Bolsters in anticipation of filing a bankruptcy petition on their behalf and

admits that he received payment from them as recently as July 15, 2009.  He acknowledged that

the original and amended accounting which he submitted to the court on September 8 and 9,

2009 did not reflect the $1,000.00.  The only explanation of his representation of the Bolsters

that Chadick offered was that his office had been looking for their file for days and discovered

"that the file had been inadvertently listed as a closed file and boxed for storage early in August."

(2d Hr'g Tr. 89:3-4).  He proffered this in an attempt to also explain why he did not have any

records to show how much money he had received from the Bolsters in anticipation of filing a

bankruptcy case on their behalf.  Presumably, accurate accounting and required bookkeeping

records would disclose funds in client escrow accounts for fees not yet earned in connection with

commencing a bankruptcy case, as well as expenses not yet incurred for filing the petition.[5]  If

---

[4]Chadick later testified that he was on vacation in Michigan the week of August 10, 2009.  (2d
Hr'g Tr. 101:23).
[5]See N.Y. R. Prof'l Conduct 1.15: Preserving Identity of Funds and Property of Others; Fiduciary
Responsibility; Commingling and Misappropriation of Client Funds or Property; maintenance of
Bank Accounts; Record Keeping; Examination of Records (effective Apr. 1, 2009).

the only financial records regarding receipt of client trust funds remain boxed with client papers in a closed file in storage, in this court's view, serious fiduciary concerns arise.

*Daniel Doherty*

On August 24, 2009, this court entered an order in the case of *In re Daniel P. Doherty,* Case No. 09-30341, at Docket no. 16, ordering Chadick to disgorge and pay to the debtor $750.00 by September 15, 2009, and to submit documentary proof to the United States Trustee's Office that he has "disgorged all fees received in connection with this case." (Order Granting Motion to Review Fees Paid Pursuant to 11 U.S.C. § 329 and for Disgorgement of Fees Paid to Christopher J. Chadick and for the Imposition of Sanctions Pursuant to 11 U.S.C. § 105(a), Aug. 24, 2009). At the September 24 hearing, Daniel Doherty testified that he had not received payment from Chadick. Assistant United States trustee Guy Van Baalen, Esq. also confirmed on the record that his office had not received the required documentary proof as directed by court order.

Mr. Doherty first consulted with Chadick in February 2008 to file a chapter 7 petition on his behalf and testified that he paid Chadick his full fee within two days of their first meeting. Although unsure of the exact total dollars paid, he testified that he distinctly remembered paying Chadick in three separate money orders: 1) a fee of $750.00; 2) the filing fee, which, this court notes, for a chapter 7 filing would be $299.00; and 3) a third fee of $250.00.[6] By March 2008,

---

[6] The Disclosure of Compensation of Attorney for Debtor Form, filed by Chadick pursuant to Fed. R. Bank. P. 2016 in Case No. 09-30341, contains a certification by Chadick that he received only $750.00 in contemplation of or in connection with the bankruptcy case. (Case No. 09-30341, Doc. no. 1 at 38). It is of grave concern to the court that Mr. Doherty's testimony reflects that he paid "just a little over [twelve] hundred dollars" to Chadick, suggesting that Chadick's certification to the court was false. (2d Hr'g Tr. 26:12). Mr. Doherty confirmed that Chadick was not performing any other legal services other than bankruptcy that might have otherwise

Mr. Doherty delivered an envelope to Chadick's office containing the listing of all his creditors and information needed to complete his filing. He proceeded to call Chadick's office every third week to follow up with what was going on with his bankruptcy and was repeatedly told, "We're working on it." (2d Hr'g Tr. 30:3). On August 29, 2008, he received a call from the office saying that they had never received his paperwork; after going into Chadick's office and confronting Chadick's staff, the office acknowledged that Mr. Doherty had dropped off an envelope but requested that he resubmit the information. Due to the delay, Mr. Doherty's credit counseling certificate lapsed and he was forced to retake the course. Chadick did not file the case until February 19, 2009 -- a full year after his initial consult and receipt of payment in full. The court finds the delay entirely attributable to the dysfunction of Chadick's office. After the case was filed, the First Meeting was scheduled for Friday, March 27, 2009. Mr. Doherty testified that he stopped by Chadick's office and was told by Chadick that the meeting had been canceled. When he inquired why, Chadick responded: "Oh, well, they just don't give reasons. They just call and cancel." (2d Hr'g Tr. 32:21-24). After he left the office, Mr. Doherty proceeded to call the Chapter 7 Trustee's office only to confirm that the meeting was still on. Without Chadick's representation, Mr. Doherty attended the First Meeting as originally scheduled in the court notice. The following Monday he called Chadick and inquired as to why he had been told that the hearing would not be held. He testified that Chadick replied, "Well, I was moving that day." (2d Hr'g Tr. 36:3). The court found Mr. Doherty's statements and demeanor to be very credible and accepts his testimony at face value.

At the hearing, Chadick introduced as Composite Exhibit "C" a one page , unsigned cover letter with the marking ("/s/") dated "09/15/09" addressed to Mr. Doherty at his West

explained any additional fee paid to Chadick which was not included in his required disclosure to the court.

Genesee address in Syracuse. Attached was a photocopy of the face side of an unprocessed check made payable to Daniel P. Doherty in the amount of $750.00, also dated "09/15/2009." Chadick testified that someone else prepared the letter but that he was not sure who did and that the original letter together with payment was deposited in the United States Postal Service mailbox on the ground floor of his office building on September 15, 2009. Chadick insisted that by mailing the check on September 15, he had complied with the court order to pay $750.00 to Mr. Doherty by September 15. When asked why he had not furnished proof to the United States Trustee of the payment as further directed in the order, Chadick responded, "We hadn't done that yet, because the entire week we were without hard line phone service, fax service, internet service, we were working in a very rudimentary fashion." (2d Hr'g Tr. 79:23-25).

The court finds Chadick's testimony to be disingenuous and does not place much stock in the proffered exhibit. As an attorney practicing for 29 years advising both debtors and creditors, he knows that a "pay by" date is a "must be received by" date. Anyone making mortgage or credit card payments understands that basic premise. If one were to accept Chadick's testimony that a payment was mailed on September 15 from Chadick's office building, it would stand to reason that his office would have sent out the documentary proof to the United States Trustee at the same time by simply copying the very same documents and enclosing them in an envelope. Neither phone, fax nor internet would have been required to complete that simple task. If the confusion and "rudimentary" nature of the new office location precluded performing the easier copy function, then, most likely, the letter and payment itself did not go out on September 15. This conclusion is bolstered by the fact that eight days after the letter had purportedly been deposited with the United States mail service for first class delivery to an address within the same city limits, it still had not been received. Chadick testified that he had not contacted his

12

bank, HSBC, to track whether the check had cleared or track its collection because he had only learned of the fact that payment had not been received on September 22, 2009, two days prior to the hearing. On that date, Mr. Van Baalen filed a letter via the court's electronic case filing system (Case No. 09-30341, Doc. no. 18) indicating that Mr. Doherty would be available as a witness to testify as to the United States Trustee's assertion that Chadick had failed to abide by this court's order. Had the check been sent out on September 15 as testified to by Chadick, the next logical step upon learning of its non-receipt on September 22, would have been to follow up with the bank, inquire as to whether the check had cleared, place a stop payment order if it had not cleared and attempt, albeit late, to comply with the court order. None of this was done. The court has serious doubts that Chadick and his office staff mailed any payment to Mr. Doherty on September 15 and considers it more plausible that the documents presented in evidence were created after Chadick received notice that Mr. Doherty would be called as a witness.

*Nancy Patane*

Ms. Patane has been a widow for five years, predeceased by her husband, a former county court judge. She testified that she first consulted with Chadick on October 8, 2007, regarding the filing of bankruptcy. Ms. Patane testified that Chadick had initially quoted her a fee of $1,200.00, but that Ms. Patane paid him $1,000.00 at their initial meeting which he agreed to accept as payment in full. Ms. Patane owns her residence free and clear of any mortgages, which is valued at $164,000.00, but was having difficulty paying her outstanding real estate taxes approximating $28,000.00. When she met with Chadick, her monthly income consisted of $1,400.00 in widow's benefits. She owes an additional $70,000.00 of unsecured debt. Ms. Patane understood that Chadick was first going to file a chapter 13 petition on her behalf and subsequently file a chapter 7 case. Ms. Patane testified that she brought all of her paperwork into

Chadick's office and was told to keep updating her file which she did regularly by bringing all of her bills into his office. As time went on, whenever she inquired of Chadick's office about the bankruptcy filing, she was told that "they were working on it." (2d Hr'g Tr. 43:6). This went on for months and extended up to approximately two years. She testified that Chadick never refunded her money and that she last spoke with him on September 10 of this year. She further testified that Chadick at that time told her that he had "far more important cases to handle" and was turning her case over to another firm. (2d Hr'g Tr. 52:11). At this point Ms. Patane sought counsel on her own. New counsel advised her that she was ineligible to file for chapter 13 because the value of the nonexempt equity in her house would have to be paid into the plan requiring large monthly plan payments that her income would not support. This advice could and should have been given to her at the first consultation with Chadick on October 8, 2007. Refinancing or selling her house was her only option. Now, more than two years later, however, she faced a pending tax foreclosure sale scheduled within the month and might not have sufficient time to pursue either alternative before losing her house.

Chadick admits that he was retained by Ms. Patane in October 2007, and that he received $1,000.00 from her to file for bankruptcy. His excuse for not filing is that he did not have all of her material until June or July of this year. Yet, he acknowledges that there is no correspondence directed to her which communicated what his office was awaiting from her during the intervening 20 months, "because we regularly spoke with Mrs. Patane." (2d Hr'g Tr. 87:1). He stated that he now has a "draft" and that "the case has been ready to go since early August." (2d Hr'g Tr. 85:7-8). His explanation rings hollow. When asked why the $1,000.00 received from her was not contained on the amended accounting which he submitted to the court on September 9, 2009, his response is that during the third week of August, he boxed up all of

14

her materials together with a check written out to her for the $1,000.00, and was awaiting her direction for a letter of representation from another attorney as to where to send it. His facile response is lame. If he is holding on to a check which he has written out and not given to the payee, then, effectively, he has not paid back the money and his reliance on a technicality in accounting that there has been an entry in his books because he wrote out a check is misplaced. The court also questions why a check made payable to Ms. Patane should be placed in a box of files to be forwarded to a third party and not sent directly to her for cashing. But even if these questions could be answered, disclosure of the receipt of these funds was required under the court's direction to render an accounting as to all fees which Chadick had been paid in anticipation of filing a bankruptcy petition, even if another attorney were to be substituted. Under a plain reading of the court's directive, Chadick was required to disclose these funds and failed to do so. Given the entry of this court's order on August 24, 2009, containing the directive to render an accounting by September 8, and the proximate timing of purportedly boxing Ms. Patane's files with the uncashed check during the third week in August, the court finds that the failure to include the receipt of the $1,000.00 was not inadvertent. On the contrary, the court finds that nondisclosure was deliberate and calculated to keep the details of this case hidden from the court at a time when Chadick was on notice that his permanent suspension from practice before this court was under consideration.

*Amy Militi*

The United States Trustee called as a witness Amy Militi, office manager within the Office of the chapter 13 trustee, who testified as to the involvement of Chadick's office in pending chapter 13 cases. Chadick currently has 60 cases in the chapter 13 pipeline. Since chapter 13 plans for above median debtors require a plan commitment of 60 months, debtor counsel needs

15

to remain available to a debtor and involved in a case up through entry of discharge to perform any legal service needed over the life of a plan.  Approximately 11 cases were highlighted that currently require and are awaiting some kind of legal action by Chadick, including responding to a motion to dismiss that went unanswered and noticing confirmation of an amended plan that Chadick never noticed.   In the four most recent chapter 13 filings from Chadick's office, Chadick had failed to timely file chapter 13 plans and did not file motions to extend the time to do so. These failures threatened Chadick's clients with potential dismissal of their cases and necessitated additional motion practice by the Chapter 13 Trustee's office which oversees and administers chapter 13 cases.

Chadick introduced into evidence as Composite Exhibit "B" a notice dated September 16, 2009, issued by the City of Syracuse Marshal notifying Chadick that he had 72 hours[7] to quit the premises which house his second floor office at 1001 James Street.  Attached was an illegible copy of a bill for transportation services and Chadick's check dated September 15, 2009, payable to a moving company. Chadick testified that on September 14, he did not personally appear with his client at a First Meeting due to a "business emergency," notwithstanding his representation to the court on September 10 that he would personally attend all initial First Meeting hearings with his clients and not substitute other counsel. (2d Hr'g Tr. 72:19).  Chadick further testified that he was personally served with eviction papers on September 11, 2009, and requested another attorney to appear with his client at the First Meeting scheduled for September 14, so that he could be at his office with the movers.  Given the court's request that he *personally* appear at all future First Meetings with his clients and his promise to the court that he would do so, the court finds his arrangement to have outside counsel cover that First Meeting inexcusable, regardless of

---

[7] Presumably, Chadick had until the end of the week on Saturday, September 19, to vacate the premises.

his personal circumstances. He did not request to be relieved of the representation he made to the court to appear in person, nor did he, with his client's knowledge, request an adjournment of the hearing to a date when he could be present. The very same client originally had a First Meeting scheduled for August 10 and when the court inquired why that hearing had not proceeded, Chadick replied, "I would've been on vacation in Michigan, and rather than have someone else cover the meeting, we had it adjourned." (2d Hr'g Tr.101:23-25). When Chadick set his own priorities, he knew how to excuse his presence by requesting an adjournment. Apparently, however, he did not accord the same priority to the court's request of him and his commitment to personally appear at all future First Meetings.[8]

At the hearing, as part of the evidentiary record, the court took judicial notice of the proceedings and docket entries in the related cases listed in footnote 2. (2d Hr'g Tr.110:3-7).

*DISCUSSION*

Federal courts have both inherent and express authority to control practice before them. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). In bankruptcy, 11 U.S.C. section 105(a) authorizes bankruptcy courts to "issue any order . . . necessary or appropriate to carry out the provisions" of Title 11 or to take any action or make any "determination necessary or appropriate

---

[8]At the September 10 hearing, the court clearly communicated that it wanted the court's orders to be treated as Chadick's first priority. "[A]ny court order should be taken as your first priority if it directs you as an attorney to respond and be present and to perform some duty . . . because I can say that my own experience has been that our orders have been routinely ignored." (Hr'g Tr. 70:6-11). Chadick's response to the court revealed that he had conflicting priorities which took precedence over this court's directives and the clients he was representing before this court. "It has never been and would never be my intention to ignore any order of this Court. . . . However, we currently have several commercial clients to whom we are under contract, that require a lot of out of town travel, sometimes on extremely short notice, sometimes on less than an hour's notice and by contractual obligation when we are notified that we have to take action on behalf of that client, it has to be done and it has to be done immediately." (Hr'g Tr. 70:17-24).

to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. § 105(a); *see also In re Nosek*, 544 F.3d 34, 43-44 (1st Cir. 2008) ("Because § 105(a) gives courts [the] power to ensure compliance with its own orders, we have referred to it as conferring 'statutory contempt powers' which 'inherently include the ability to sanction a party.'") (citations omitted).

Additionally, bankruptcy courts have the inherent authority to regulate attorney practice before the court. *See, e.g, Mapother & Mapother, P.S.C. v. Cooper (In re Downs)*, 103 F.3d 472, 477 (6th Cir. 1996) ("Bankruptcy courts, like Article III courts, enjoy inherent power to sanction parties for improper conduct.") (citation omitted); *Jove Engineering Inc. v. I.R.S. (In re Jove Engineering, Inc.)*, 92 F.3d 1539, 1553 (11th Cir. 1996) ("Section 105 aside, courts have inherent contempt powers in all proceedings, including bankruptcy, to 'achieve the orderly and expeditious disposition of cases.'") (citation omitted); *Fellheimer, Eichen & Braverman, P.C. v. Charter Tech., Inc.*, 57 F.3d 1215, 1224 (3rd Cir. 1995) (noting in the bankruptcy context that "among the implied and 'incidental' powers of a federal court is the power 'to discipline attorneys who appear before it'") (citations omitted); *Burd v. Walters (In re Walters)*, 868 F.2d 665, 669 (4th Cir. 1989); *see also In re Woodward*, 229 B.R. 468, 476 (Bankr. N.D. Okla. 1999) ("A bankruptcy court has both the express and inherent authority to regulate the attorneys who practice before it.") (citing *In re Crayton,* 192 B.R. 970, 976 (9th Cir. BAP 1996)).

Included within the court's authority is the ability to disbar or suspend an attorney from practice before the court. *In re Woodward*, 229 B.R. at 476; *In re Moix-McNutt*, 220 B.R. 631, 638 (Bankr. E.D. Ark. 1998) (suspension from representing debtors in the Eastern or Western District of Arkansas for four years); *In re Heard*, 106 B.R. 481, 485 (Bankr. N.D. Ohio 1989). (one year suspension); *see also In re Lehtinen*, 564 F.3d 1052, 1058-62 (9th Cir. 2009).

18

"In order to suspend an attorney, a court must find by clear and convincing evidence that an attorney has acted before that court in such a fashion as to justify suspension." *Woodward*, 229 B.R. at 476.   "In addition, a court must provide the attorney with notice of the conduct at issue and an opportunity to respond to its concerns." *Id.*; *see also In re Lehtinen*, 564 F.3d at 1060.

On April 1, 2009, new Rules of Professional Conduct governing the practice of law in New York went into effect.   In her motion, the United States Trustee alleged that Chadick violated three Rules: Rule 1.1 ("Competence"), Rule 1.3 ("Diligence") and Rule 1.4 ("Communication").[9]   Based on the record of the evidentiary hearing conducted by the court in

---

[9] These Rules provide as follows:

Rule 1.1: COMPETENCE

    (a) A lawyer should provide competent representation to a client.  Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

    (b) A lawyer shall not handle a legal matter that the lawyer knows or should know that the lawyer is not competent to handle, without associating with a lawyer who is competent to handle it.

    (c) [A] lawyer shall not intentionally:

        (1) fail to seek the objectives of the client through reasonably available means permitted by law and these Rules; or

        (2) prejudice or damage the client during the course of the representation except as permitted or required by these Rules.

Rule 1.3: DILIGENCE

    (a) A lawyer shall act with reasonable diligence and promptness in representing a client.

    (b) A lawyer shall not neglect a legal matter entrusted to the lawyer.

    (c) A lawyer shall not intentionally fail to carry out a contract of employment entered into with a client for professional services, but the lawyer may withdraw as permitted under these Rules.

Rule 1.4: COMMUNICATION

    (a) A lawyer shall:

        (1) promptly inform the client of: (i) any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(j), is required by these Rules; (ii) any information required by court rule or other law to be communicated to a client; and (iii) material developments in the matter including settlement or plea offers.

        (2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;

this matter, the court finds by clear and convincing evidence that Chadick did not provide competent representation to any of the clients who testified, that he neglected and intentionally failed to carry out the contracts of employment and legal matters entrusted to his care, that he failed to keep his clients reasonably informed about the status of the matters and failed to promptly comply with their reasonable requests for information, in violation of N.Y. R. Prof'l Conduct 1.1, 1.3, and 1.4.

The court further finds by clear and convincing evidence that Chadick is guilty of misconduct by engaging in "conduct involving dishonesty, fraud, deceit or misrepresentation" and conduct "prejudicial to the administration of justice" in violation of N.Y. R. Prof'l Conduct 8.4(c) and (d).  The court finds that Chadick lied to Mr. Doherty when he informed him that his First Meeting was cancelled. The court further finds Chadick's testimony to be misleading and deceitful. Despite evidence to the contrary, Chadick continued to profess the completeness of the accounting which the court directed him to produce (Composite Exhibit "A").  Chadick testified and presented to the court Composite Exhibit "C" -- comprising the copy of the letter and check made payable to Mr. Doherty -- which the court finds was never sent.  Chadick's inordinate delay in filing bankruptcy petitions for debtors in need of immediate relief is inexcusable and undermines the ability of this court to appropriately administer justice. Furthermore, Chadick's dilatory practices weigh heavily on a system that depends upon efficiency to effectively administer the high volume of cases.  The additional motion practice and hearings necessitated

---

(3) keep the client reasonably informed about the status of the matter;

(4) promptly comply with a client's reasonable requests for information; and

(5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by these Rules or other law.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

by Chadick's delays in filing required documents and continuing complaints of his inadequate representation have not only damaged his own clients but placed additional burdens upon the chapter 7 trustees, the Office of the Chapter 13 trustee, United States Trustee's Office and other parties in interest involved in the respective cases. *See* N.Y. R. Prof'l Conduct 8.4(c), (d).

Chadick has expressed his intention not to continue the practice of bankruptcy in this area and specifically agreed, as noted previously, at the end of the September 10 hearing to cease filing any bankruptcy cases under any chapter across the District and transition out of his pending cases in this court by effectuating substitutions of counsel (Hr'g Tr. 79:3-85:5), a position that was reiterated by his counsel at the September 24, 2009 hearing. (2d Hr'g Tr. 109:13-21). At the September 24 hearing, Chadick also agreed to deliver to the United States Trustee's Office in care of Mr. Van Baalen the personal legal files of clients Tammy Bolster, Daniel Doherty and Nancy Patane, together with money orders made payable to these individuals in the respective amounts of $1,200.00, $750.00, and $1,000.00, for receipt by not later than September 29, 2009. The court accepts these concessions and confirms its earlier oral ruling that by September 29, 2009, the foregoing files and payments be turned over to the United States Trustee's Office. The court further directs that by January 30, 2010, Chadick is to arrange for a substitution of counsel in each of his pending cases before this court and to have filed the requisite motions and proposed orders to effectuate the same.[10] Although these developments may provide some future assurance with regard to debtor practice, the evidence before this court strongly supports further restrictions on Chadick's ability to practice before the federal courts of this District.

---

[10] Under Local Bankruptcy Rule 2092-1(a) a substitution of debtor's counsel requires an order of the court. *See* LBR 2092-1(a).

Pursuant to Rule 83.4 (a) of the Local Rules of Practice for the United States District Court for the Northern District of New York, the Chief Judge of the district is charged with "all matters relating to discipline of members of the bar of this Court and any person may be restricted from practicing in this Court or otherwise disciplined for cause." This court recognizes the authority of the District Court in this regard and, accordingly, shall refer this matter to the Chief Judge for consideration of any further action deemed appropriate.

N.Y. R. Prof'l Conduct 8.3 (a) provides that knowledge of a lawyer's violation of the Rules of Professional Conduct which calls into question "that lawyer's honesty, trustworthiness or fitness as a lawyer" requires reporting "such knowledge to a tribunal or other authority empowered to investigate or act upon such violation." In compliance with this Rule, this court shall also refer this matter to the Grievance Committee for the Fifth Judicial District to undertake any further investigation and action as it sees fit.

Accordingly, it is hereby ordered that the oral ruling announced on the record on September 24, 2009 is hereby affirmed which directed Christopher J. Chadick by not later than September 29, 2009 to deliver to the Office of the United States Trustee, Attn: Guy A. Van Baalen, Esq., 10 Broad Street, Room 105, Utica, New York, 13501, the following:

1)  the legal file of Tammy and Benjamin Bolster together with a money order in the amount of $1,200.00;

2)  the legal file of Daniel Doherty together with a money order in the amount of $750.00; and

3)  the legal file of Nancy Patane together with a money order in the amount of $1,000.00; and it is further

22

Ordered that Christopher J. Chadick is prohibited from initiating any further bankruptcy proceedings on behalf of any clients under any chapter of the United States Bankruptcy Code in the Northern District of New York; and it is further

Ordered that Christopher J. Chadick by not later than January 30, 2010 shall secure an order from the court in each of the cases currently pending before the United States Bankruptcy Court, Northern District of New York in which he represents the Debtor(s) terminating his representation upon submission of appropriate substitution of counsel forms.

In light of the clear violations of the Rules of Professional Conduct, the court shall forward a copy of this Memorandum-Decision and Order to The Honorable Norman A. Mordue, Chief Judge of the United States District Court, Northern District of New York and to the Grievance Committee for the Fifth Judicial District, Attn. Edward Z. Menkin, Esq., for any further review and action deemed appropriate.

SO ORDERED.

Dated: December 8, 2009
Syracuse, New York

Hon. Margaret Cangilos-Ruiz
United States Bankruptcy Judge